Slip Op. 17-55

## UNITED STATES COURT OF INTERNATIONAL TRADE

UNITED STATES,

      Plaintiff,

      v.

INTERNATIONAL TRADING SERVICES,
LLC and JULIO LORZA,

      Defendants.

Before: Mark A. Barnett, Judge

Court No. 12-00135

## OPINION

[The court grants Plaintiff's motion for partial summary judgment.]

Dated:  May 5, 2017

Daniel B. Volk, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for Plaintiff.  With him on the brief were Chad A. Readler, Acting Assistant Attorney General, Jeanne E. Davidson, Director, and Patricia M. McCarthy, Assistant Director.  Of counsel on the brief was Bryan K. Luby, Senior Attorney, U.S. Customs and Border Protection, of New Orleans, LA.

Peter S. Herrick, Peter S. Herrick PA, of St. Petersburg, FL, for Defendants.

      Barnett, Judge:  Before the court is Plaintiff's ("Plaintiff" or "United States")

motion for partial summary judgment pursuant to section 592 of the Tariff Act of 1930,

as amended, 19 U.S.C. § 1592 (2006),[1] regarding eight misclassified shipments of

sugar.  Pl.'s Mot. for Partial Summ. J. ("Pl.'s Mot"), ECF No. 53.  Plaintiff contends

Defendants International Trading Services, LLC ("ITS") and Julio Lorza ("Mr. Lorza") are

jointly and severally liable for unpaid duties and penalties amounting to $986,967.31,

---

[1] Further citations to the Tariff Act of 1930, as amended, are to the relevant portions of Title 19 of the U.S. Code, 2006, edition.

plus interest, as a result of negligent misclassification of eight entries of sugar under an

improper subheading of the Harmonized Tariff Schedule of the United States

("HTSUS").[2]  *Id.* at 1; *see also* Compl. ¶¶ 32, 34, ECF No. 2.  Plaintiff's motion is

unopposed.  *See generally* Docket.  This court has jurisdiction pursuant to 28 U.S.C.

§ 1582.  For the reasons discussed below, the court grants Plaintiff's motion for partial

summary judgment.

BACKGROUND

## I.      Material Facts Not in Dispute

The party moving for summary judgment must show "there is no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law."

United States Court of International Trade ("USCIT") Rule 56(a).  Movants should

present material facts as short and concise statements, in numbered paragraphs, and

cite to "particular parts of materials in the record" as support.  USCIT Rule 56(c)(1)(A);

USCIT Rule 56.3(a).  When, as here, the nonmoving party has failed to respond to the

motion or otherwise address the movant's factual positions, the court may consider

those facts as "undisputed for purposes of the motion," and may "grant summary

judgment if the motion and supporting materials," including the undisputed facts, "show

that the movant is entitled to it."  USCIT Rule 56(e)(2)-(3); *see* USCIT Rule 56.3(b) (the

opponent must include in its responsive papers "correspondingly numbered paragraphs

responding to the numbered paragraphs in the statement of the movant").  Plaintiff

---

[2] All citations to the HTSUS are to the 2007 version, as determined by the date of
importation of the merchandise.

submitted a statement of undisputed material facts with its motion.  *See* Pl.'s Statement

of Material Facts in Supp. of Summ. J ("Pl.'s SOF"), ECF No. 53-1.  Upon review of

Plaintiff's facts and supporting materials, the court finds the following undisputed

material facts.[3]

Mr. Lorza was the President, Chief Executive Officer, and Managing Member of

ITS until its dissolution in 2009.  Pl.'s SOF ¶ 10.  In May and June 2007, Mr. Lorza,

through ITS, imported into the United States eight shipments of sugar with a total value

of $935,333.  Pl.'s SOF ¶¶ 1, 11; Pl.'s Response in Opp'n to Def. Lorza's Mot. to

Dismiss ("Pl.'s MTD Opp'n"), Ex. A at CBP000147 ("Domestic Value Calculation"), ECF

No. 49-1.

Entry documents show that ITS classified the sugar under HTSUS subheading

1701.99.0500, which has a corresponding duty rate of $0.036606 per kilogram.  Pl.'s

SOF ¶ 2; Pl.'s Mot., App. ("App.") 25, 34, 51, 71, 98, 107, 132, 141 (collectively, "Entry

Summaries"), ECF No. 53-3; HTSUS subheading 1701.99.0500 (rate of duty); *see also*

App. 1-19 (appending the relevant portions of the HTSUS).  Subheading 1701.99.05.00

covers "[c]ane or beet sugar and chemically pure sucrose, in solid form," that also is

"[d]escribed in general note 15 of the tariff schedule and entered pursuant to its

provisions."  HTSUS subheading 1701.99.05.00; App. 10.[4]

---

[3] Citations are provided to the relevant paragraph number of the undisputed facts;
internal citations generally are omitted. Citations to the record are provided when a fact
is uncontroverted by record evidence.
[4] General note ("GN") 15 covers entries of certain agricultural products (including sugar
entered under chapter 17) that meet certain conditions.  When one or more of the
conditions are met, the imported merchandise qualifies for the reduced duty rate of, in

Relevant thereto, each shipment had a net weight exceeding five kilograms. Pl.'s

SOF ¶ 4.[5]   None of the eight shipments contained blended syrups or cotton.  Pl.'s SOF

¶¶ 8, 9.  None of the eight shipments were imported by any U.S. agency or for the

account thereof.  Pl.'s SOF ¶ 3; *see also* Entry Summaries (reflecting ITS as the

importer).  Each of the eight shipments was introduced into the commerce of the United

States.  Pl.'s SOF ¶ 11.

U.S. Customs and Border Protection ("CBP" or "Customs") sought

documentation from ITS supporting its claimed classification for two entries before rate-

advancing[6] them.  App. 48, 140 (notices of action informing ITS that Customs was

investigating entries for false statements "result[ing] in underpayment of duties and

failure to properly declare merchandise subject to quota").  Customs later classified

Defendants' entries under HTSUS subheadings 1701.99.5010 and 1701.99.5090, with a

corresponding duty rate of $0.3574 per kilogram.  App. 34, 67, 77, 95, 112, 141, 158.[7]

---

this case, HTSUS 1701.99.05.00, and is not counted against the otherwise applicable tariff rate quota.   GN 15, HTSUS; *see also infra* Discussion Sect. II.A.i.

[5] In May 2007, ITS made one entry of 7,920 bags of sugar with a combined net weight of 179,942.40 kilograms.  App. 25, 31.  In June 2007, ITS made seven entries of sugar collectively consisting of 39,600 bags of sugar, with a combined net weight of 897,352.42 kilograms.  App. 34, 51, 71, 98, 107, 132, 141.

[6] An entry is rate-advanced when it is "liquidate[d] at a higher rate" than the rate associated with the claimed classification.  *See United States v. Horizon Prods. Int'l, Inc.*, 39 CIT ___, ___, 82 F. Supp. 3d 1350, 1354 (2015).

[7] CBP rate-advanced seven of the eight entries before liquidation.  App. 34, 67, 77, 95, 112, 141, 158.  The first entry, Entry Number U52-67034317, liquidated without being rate-advanced.  *See* App. 20 (seeking the return of liquidated entry summaries); App. 21 (requesting the constructed entry summary for Entry Number U52-67034317); Pl.'s MTD Opp'n, Ex. A at CBP000145-146 ("Penalty Statement") (penalty statement reflecting a $57,735.46 actual loss of revenue for the non-rate-advanced entry, and a $287,920.31 potential loss of revenue for the eight rate-advanced entries).

Plaintiff values its revenue loss at $345,655.77.   Pl.'s SOF ¶ 12; Penalty Statement.  Of

that amount, Plaintiff has recovered $50,000 from ITS's surety.  Pl.'s SOF ¶ 12; App.

159.

## II.    Procedural History

The United States commenced this enforcement action on May 17, 2012.   *See*

Compl.  Defendants answered the complaint on September 11, 2012.   Defs.' Answer &

Aff. Defenses ("Answer"), ECF No. 4.[8]  On February 13, 2017, Plaintiff moved for partial

summary judgment.  Pl.'s Mot.  Defendants' response to the motion was due on March

20, 2017; to date, Defendants have not responded.   *See* Docket Entry, ECF No. 53.

Thus, the motion is ripe for decision.

---

[8] In connection with Mr. Lorza's failure to respond to Plaintiff's First Set of Requests for
Admission, on March 21, 2016, the court granted Plaintiff's Motion to Deem Requests
For Admission Admitted. *See* Order (Mar. 21, 2016), ECF No. 34; Pl.'s Mot. to Deem
Requests for Admission Admitted ("Pl.'s Discovery Mot."), ECF No 30.  Mr. Lorza
subsequently moved, out of time, to oppose Plaintiff's Motion to Deem Requests for
Admissions Admitted.  Def., Julio Lorza, Moves to Oppose Pl.'s Mot. to Deem Req.'s for
Admis. Admitted, Out of Time, ECF No. 35.  The court treated Defendant's motion as a
Motion to Withdraw and Substitute Admissions ("Def.'s Mot. to Withdraw") and deferred
ruling on the motion pending consideration of Plaintiff's expected partial motion for
summary judgment. *See* Order (May 18, 2016), ECF No. 41.  Plaintiff does not rely on
any of the admissions Defendant seeks to withdraw in its motion for summary judgment
and, therefore, Defendant's motion is granted for purposes of ruling on Plaintiff's motion.
*See* Def.'s Mot. to Withdraw, Attach. A (Defendant's response to Plaintiff's first set of
requests for admissions) ("Def.'s Admis."), ECF No. 35; *see also* Pl.'s Discovery Mot,
Attach. A (Plaintiff's first set of requests for admission) ("Pl.'s RFA"), ECF No. 30.

DISCUSSION

## I.      Standard of Review

"The U.S. Court of International Trade reviews all issues in actions brought for

the recovery of a monetary penalty under § 1592 *de novo*, including the amount of any

penalty." *Horizon Prods. Int'l*, 82 F. Supp. 3d at 1354 (citing 19 U.S.C. § 1592(e)(1)).

Summary judgment is proper when "the movant shows that there is no genuine issue as

to any material fact and the movant is entitled to judgment as a matter of law."  USCIT

Rule 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Although substantive law will identify the materiality of a fact, *Anderson*, 477 U.S. at

248, there is no genuine issue when the evidence is "so one-sided that one party must

prevail as a matter of law," *id.* at 251-52; *see also Horizon Prods. Int'l,* 82 F. Supp. 3d at

1355.  Still, the court must consider the evidence in the light most favorable to the non-

moving party, drawing all reasonable inferences in its favor.   *Anderson*, 477 U.S. at

255.

## II.     Analysis

### A.      Negligence

Section 1592 bars the negligent entry, introduction, or attempt to enter or

introduce, merchandise into the commerce of the United States by means of a material

false statement or material omission.  19 U.S.C. § 1592(a)(1)(A).  Plaintiff bears the

initial burden of proof establishing the act or omission constituting the violation; the

burden then shifts to the alleged violator to "affirmatively demonstrate that it exercised

reasonable care under the circumstances."  *United States v. Ford Motor Co.*, 463 F.3d

1267, 1279 (Fed. Cir. 2006); 19 U.S.C. § 1592(e)(4).

### i.    Material False Statement

The record shows that ITS, through Mr. Lorza, classified the subject merchandise

under HTSUS subheading 1701.99.05.00.  Pl.'s SOF ¶ 2; Entry Summaries.  That

subheading applies to sugar and sucrose "[d]escribed in general note 15 of the tariff

schedule and entered pursuant to its provisions."  Subheading 1701.99.05.00, HTSUS;

App. 10.  Pursuant to GN 15, entries of sugar under chapter 17 that would typically be

"subject to a tariff-rate quota" are not counted against the "in-quota quantity" when:

> (a) such products [are] imported by or for the account of any agency of the
> U.S. Government; (b) such products [are] imported for the personal use of
> the importer, *provided* that the net quantity of such product in any one
> shipment does not exceed 5 kilograms; (c) such products, *which will not
> enter the commerce of the United States*, [are] imported as samples for
> taking orders, for exhibition, display or sampling at a trade fair, for
> research, for use by embassies of foreign governments or for testing of
> equipment, provided that written approval of the Secretary of Agriculture
> or his designated representative the United States Department of
> Agriculture (USDA) is presented at the time of entry; (d) [such products
> consist of] blended syrups . . .; and (e) [such products consist of]
> cotton . . . .

GN 15, HTSUS (second emphasis added); App. 1.

Defendants' entries are not covered by the provisions of GN 15.  None of the

eight shipments were imported by any U.S. agency or for the account thereof.  Pl.'s

SOF ¶ 3; Entry Summaries; GN 15 (a).  Each shipment had a net weight exceeding five

kilograms, precluding any claim for personal use, and was introduced into the

commerce of the United States.  Pl.'s SOF ¶¶ 4, 5, 11; GN 15(b), 15(c); *see also supra*

note 5.  The shipments did not contain cotton or blended syrups.  Pl.'s SOF ¶¶ 8, 9; GN

15(d), 15(e).  Accordingly, the classification of the entries under subheading

1701.99.0500 constituted a false statement.[9]

When a statement has the "potential to alter Customs' appraisement or liability

for duty," it is material.  *Horizon Prods. Int'l*, 82 F. Supp. 3d at 1356 (citation omitted); ;

*see also United States v. Menard, Inc.*, 16 CIT 410, 417, 795 F. Supp. 1182, 1188

(1992) (materiality for purposes of § 1592 refers to the false statement's effect on CBP's

determination of the applicable duty); 19 C.F.R. Pt. 171, App'x B (B) (2013) (defining

materiality for purposes of § 1592).  The asserted classification of merchandise in entry

paperwork "has the tendency to influence Customs' decision in assessing duties and

therefore constitutes a material statement under the statute."  *United States v. Optrex*

*Am., Inc.*, 32 CIT 620, 631, 560 F. Supp. 2d 1326, 1336 (2008).  Because Defendants'

misclassification influenced Customs' assessment of duties, leading to the difference

between a proper duty of $0.3574 per kilogram and the declared duty of $0.036606 per

kilogram, it was material.  *See* Pl.'s SOF ¶ 12; *Optrex Am., Inc.*, 32 CIT at 631, 560 F.

Supp. 2d at 1336.

---

[9] Further supporting this finding is Defendant's failure to admit or, more importantly, deny, that the entries did not fall within the exclusions stated in GN 15.  *See* Def.'s Admis. at 1; Pl.'s RFA ¶ 15; *see also* USCIT Rule 36(a)(3) ("A matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter . . . . "); USCIT Rule 36(a)(4) ("If a matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it.").

### ii.    Reasonable Care

The burden of proof now shifts to Defendants to show that "the act or omission did not occur as a result of negligence;" that is, that they demonstrated reasonable care. 19 U.S.C. § 1592(e)(4); *Ford Motor Co.*, 463 F.3d at 1279.  Defendants did not respond to Plaintiff's motion and have proffered no evidence of reasonable care. Accordingly, Plaintiff is entitled to judgment in its favor; Defendants are jointly and severally liable for unpaid duties, penalties, and applicable interest.[10]

### B.    Duties

On count one of the complaint, Plaintiff seeks to recover $295,655.77 in unpaid duties, which consists of $345,655.77 in lost revenue minus the $50,000 recovered from ITS's surety.  Pl.'s Mot. at 4, 10; Pl.'s SOF ¶ 12; *see also* Compl. ¶¶ 31, 32; Penalty Statement.  Section 1592 provides that CBP shall require the restoration of "lawful duties, taxes, and fees" of which the United States may have been deprived as a result of a violation of § 1592(a) "whether or not a monetary penalty is assessed."  19 U.S.C. § 1592(d).  Accordingly, the court will order Defendants to pay the United States $295,655.77 in unpaid duties.

---

[10] Section 1592 applies to "person[s]."  19 U.S.C. § 1592(a)(1)(A).  ITS, the importer of record, is a "person" for purposes of § 1592. *See* 19 U.S.C. § 1401(d) ("The word "person" includes partnerships, associations, and corporations.").  Mr. Lorza, who was personally involved in introducing the imported sugar into the commerce of the United States," Pl.'s SOF ¶¶ 1, 11, is also a "person," *see United States v. Trek Leather, Inc.*, 767 F.3d 1288, 1299 (Fed. Cir. 2014) (applying "longstanding agency law" to find that the individual defendant's "own acts [came] within the language of subparagraph (A)" when he acted on behalf of the corporate importer-of-record).

### C.    Penalties

On count two of the complaint, Plaintiff seeks a $691,311.54 penalty, i.e., two times the lost revenue, pursuant to 19 U.S.C. § 1592(c)(3).  Pl.'s Mot. at 10; *see also* Compl. ¶ 34; Penalty Statement.  The penalty determination is committed to the court's discretion, subject to statutory maximums.  19 U.S.C. § 1592(c)(1); *Horizon Prods. Int'l*, 82 F. Supp. 3d at 1359.  Section 1592(c)(3) permits the court to assess a penalty "in an amount not to exceed . . . the lesser of (i) the domestic value of the merchandise, or (ii) two times the lawful duties of which the United States is or may be deprived."  19 U.S.C. § 1592(c)(3).

In the absence of legislative guidance the court has identified 14 non-exclusive factors that it may consider when determining the appropriate penalty.  *Complex Mach. Works Co*., 23 CIT 942, 949–50, 83 F. Supp. 2d 1307, 1315 (1999) *see also United States v. Optrex Am., Inc*., 32 CIT 620, 640-42, 560 F. Supp. 2d 1326, 1342-44 (2008) (considering four of the fourteen factors).   The factors are:

> (1) the defendant's good faith effort to comply with the statute; (2) the defendant's degree of culpability; (3) the defendant's history of previous violations; (4) the nature of the public interest in ensuring compliance with the regulations involved; (5) the nature and circumstances of the violation at issue; (6) the gravity of the violation; (7) the defendant's ability to pay; (8) the appropriateness of the size of the penalty to the defendant's business and the effect of a penalty on the defendant's ability to continue doing business; (9) that the penalty not otherwise be shocking to the conscience of the [c]ourt; (10) the economic benefit gained by the defendant through the violation; (11) the degree of harm to the public; (12) the value of vindicating the agency authority; (13) whether the party sought to be protected by the statute had been adequately compensated for the harm; and (14) such other matters as justice may require.

*Complex Mach. Works Co.*, 23 CIT at 949-50, 83 F. Supp. 2d at 1315.  The first three factors "are indicia of the *defendant's character*."  *Id.* at 949–50, 83 F. Supp. 2d at 1316.  Factors four through six speak to the "*seriousness of the offense*."  *Id.* at 950, 83 F. Supp. 2d at 1316.  Factors seven through nine speak to "the *practical effect of the imposition of the penalty*."  *Id.* at 950, 83 F. Supp. 2d at 1316.  The tenth factor, "the economic benefit gained by the defendant," speaks for itself.  *Id.* at 950, 83 F. Supp. 2d at 1316.  Those ten factors relate to deterrence, which, "because of the clear Congressional preference for deterrence in this statute," are to be accorded more weight.  *Id.* at 950, 83 F. Supp. 2d at 1316.  Factors eleven to thirteen instead reflect "*public policy concerns*."  *Id.* at 950, 83 F. Supp. 2d at 1316.

Plaintiff's requested penalty equals two times the unpaid duties and is less than the $935,333 domestic value of the merchandise.  Penalty Statement; Domestic Value Calculation.  It is, therefore, consistent with 19 U.S.C. § 1592(c)(3).

The court's 14-factor analysis is hindered by Defendant's failure to respond to Plaintiff's motion with any evidence that might support penalty mitigation.  Plaintiff summarily points to Defendants' lack of cooperation during the administrative proceedings and throughout discovery in this case and contends that there is no "credible, persuasive evidence" supporting "a penalty of any less than $691,311.54."  Pl.'s Mot. at 11 (quoting *United States v. Country Flavor Corp.*, 844 F. Supp. 2d 1348, 1358 n.12 (2012) ("As the Government observes in its Renewed Motion, 'Country Flavor has done nothing meriting the Court's exercise of its discretion to impose a reduced penalty.' . . . There is no record evidence that might justify some degree of mitigation.")).

However, the statutory maximum is not the "default starting point" for the imposition of

penalties, only to be adjusted downward when evidence supports mitigation.  *See*

*Optrex Am.*, 32 CIT at 641, 560 F. Supp. 2d at 1344 (citing *United States v. Modes, Inc.*,

17 CIT 627, 635, 826 F. Supp. 504, 512 (1993)); *Complex Mach. Works Co.*, 23 CIT at

946, 83 F. Supp.2d at 1312 ("[T]he law requires the court to begin its reasoning on a

clean state. It does not start from any presumption that the maximum penalty is the

most appropriate or that the penalty assessed or sought by the government has any

special weight.") (citation omitted).  Instead, the court determines the appropriate

amount in light of the totality of the evidence supporting a higher or lower penalty.  *Cf.*

*Optrex Am.*, 32 CIT at 641-42, 560 F. Supp. 2d at 1344 (starting the "evaluation of the

penalty amount at the midpoint where it may be subject to upward or downward

departure based on mitigating and aggravating factors").  The court now considers the

*Complex Machine Works Co.* factors to the extent they may shed light on the Court's

determination of the appropriate penalty.

Regarding the first three factors, there is no evidence Defendants made a good

faith effort to comply with the statute by, for example, voluntarily disclosing the violation.

*Cf. United States v. Nat'l Semiconductor Corp.*, 30 CIT 769, 771 (2006) (voluntary

disclosure of misclassified entries favored mitigation).  Customs' guidelines suggest that

suspected violators "exhibit[ing] extraordinary cooperation beyond that expected from a

person under investigation" or who take "immediate remedial action" may obtain the

benefit of this factor.  19 C.F.R. Pt. 171, App. B(G)(2),(3)(mitigating factors); *Optrex*

*Am.*, 32 CIT at 640, 560 F. Supp. 2d at 1343.  Here, however, Defendants impeded

resolution of this matter by failing to participate in the administrative proceedings.  *See*

*United States v. Int'l Trading Services*, 40 CIT ___, ___, 190 F. Supp. 3d 1263, 1271-

72, 1274 (2016) (denying Mr. Lorza's motion to dismiss) (discussing Defendants' failure

to take advantage of opportunities to be heard at the administrative level).  There is no

evidence of past violations; however, the instant case concerns not one but eight

serially misclassified entries accruing to Defendants a significant economic benefit.  *See*

*supra* Discussion Sect. II.A.i; Pl.'s SOF ¶ 12; *cf. Optrex Am.*, 32 CIT at 641, 560 F.

Supp. 2d at 1344 (the lack of past violations favored mitigation because it suggested

"an isolated violation [had occurred], as opposed to habitual misconduct").   These

factors support a substantial penalty.

With regard to the fourth factor, there is "a significant public interest in upholding

certain standards of conduct in the importation of foreign goods into the United States."

*Optrex Am.*, 32 CIT at 641, 560 F. Supp. 2d at 1343.  When, as here, the public interest

to be vindicated is "the truthful and accurate submission of documentation to Customs

and the full and timely payment of duties, . . . the imposition of a penalty of some

substance" is merited.  *See Complex Mach. Works Co*., 23 CIT at 952, 83 F. Supp.2d at

1317) (citing *Modes*, 17 CIT at 638, 826 F. Supp. at 514); *cf. Nat'l Semiconductor Corp*.,

30 CIT at 772 (public interest factor potentially supported mitigation when there was a

voluntary disclosure in order to encourage voluntary disclosures).  Here, there was no

voluntary disclosure to support mitigation; thus, this factor supports a significant penalty.

The fifth and sixth factors involve the nature, circumstances, and gravity of the

violation.  The record reflects minimal evidence on the circumstances of the violation.

Defendants used a customs broker for the relevant entries.  Def.'s Admis. at 1; Pl.'s

RFA ¶ 8.  However, Defendants "provided information and/or direction to [the broker] in

connection with the [entries]," and did not take steps to ensure the accuracy of the entry

paperwork submitted to CBP.  Def.'s Admis. at 1; Pl.'s RFA ¶¶ 9, 13-14.  The "[g]ravity

of the violation may be evaluated in terms of the frequency of the violations, the amount

of the duties at issue, and the domestic value of the imported goods."  *Complex Mach.*

*Works Co*., 23 CIT at 953, 83 F. Supp. 2d at 1317.  Plaintiff has established eight

violations on several dates in May and June 2007, implicating goods with a total

domestic value of $935,333 and which resulted in $295,655.77 in unpaid duties.  *See*

Domestic Value Calculation; Penalty Statement.  Defendants' incorrect reporting would

have allowed them to avoid 90 percent of the properly assessed duties on these

imports.  The significant sums involved support the imposition of a significant penalty.

Regarding the practical effect of the imposition of the penalty, although ITS's

dissolution may affect its ability to pay,[11] there is no evidence concerning Mr. Lorza's

ability (or inability) to pay any assessed penalty or the penalty's impact on his ability to

do business.  *Cf.* 19 C.F.R. Pt. 171, App'x B(G)(6) (a party asserting an inability to pay

must present documentary evidence supporting the assertion).  As noted above,

however, Defendants' conduct resulted in the evasion of $345,655.77 in lawful duties,

taxes, and fees, a substantial economic benefit.  Pl.'s SOF ¶ 12.  Thus, no sum within

the statutory range is shocking to the court's conscience.

---

[11] The record shows that ITS's dissolution was effected by the Florida Department of State for failure to file an annual report.  Compl. ¶¶ 3-4; Answer ¶ 2.

The deterrence factors support a heightened penalty.  Public policy considerations likewise favor a heightened penalty.  The eleventh and thirteenth factors assess the degree of harm to the public and whether adequate compensation has been paid thereto.  "[T]he amount of harm suffered by the Government is not limited to the dollar value of duties lost."  *Complex Mach. Works Co.*, 23 CIT at 955, 83 F. Supp. 2d at 1319 (quoting *United States v. Snuggles, Inc.*, 20 CIT 1057, 1068, 937 F. Supp. 923, 927 (1996) ("[T]he purpose of this penalty is not just to replace lost levies, but to remedy a wrong.")).  In addition to the duties that remain unpaid, Plaintiff has expended resources investigating the misclassified entries and pursuing this enforcement action against uncooperative Defendants.  *See* Pl.'s Mot. at 5, 11; Pl.'s Discovery Mot.; Def.'s Mot. to Withdraw.  The twelfth factor--vindicating agency authority--also supports a heightened penalty to "deter future lawbreakers from considering [similar] actions" so that CBP may properly conduct its functions. *Complex Mach. Works Co.*, 23 CIT at 955, 83 F. Supp.2d at 1319.

In light of the afore-mentioned factors strongly favoring a heightened penalty, and absent evidence supporting penalty mitigation, the court finds that the statutory maximum penalty of $691,311.54 is appropriate.  *See United States v. Nat'l Semiconductor Corp.*, 547 F.3d 1364, 1369 (Fed. Cir. 2008) (court may award the maximum penalty for a negligent violation).

### D.    Interest

Plaintiff seeks an award of prejudgment interest on the unpaid duties.  Pl.'s Mot.

at 10; Compl. at 9 (Wherefore clause ¶ 4).[12]  The court has discretion to award

prejudgment interest to compensate the United States for the "loss of use of the money

due."  *United States v. Imperial Food Imports*, 834 F.2d 1013, 1016 (Fed. Cir. 1987)

("[I]n cases such as this in which no statute specifically authorizes an award of pre-

judgment interest, such an award lies within the discretion of the court as part of its

equitable powers.").[13]  The court considers the following factors to determine whether to

award prejudgment interest: "the degree of personal wrongdoing on the part of the

defendant, the availability of alternative investment opportunities to the plaintiff, whether

the plaintiff delayed in bringing or prosecuting the action, and other fundamental

considerations of fairness."  *United States v. Great Am. Ins. Co. of N.Y.,* 738 F.3d 1320,

1326 (Fed. Cir. 2013) (citation omitted).

Defendants' wrongdoing discussed above, *supra* Discussion Sect. II.C,

demonstrates that an award of prejudgment interest is appropriate.  Further, there is no

evidence Plaintiff delayed initiating or prosecuting this action.  Therefore, the court

awards prejudgment interest on the unpaid duties from the date of CBP's final demand

---

[12] Prejudgment interest is not available for penalties assessed pursuant to 19 U.S.C. § 1592(c).  *Nat'l Semiconductor Corp*., 547 F.3d at 1369-71.

[13] Section 1592 does not affirmatively address whether pre-judgment interest must be assessed.  Instead, § 1592(c)(4)(B) sets the interest rate on the lawful duties, taxes, and fees as the  maximum penalty for negligent or grossly negligent violators who disclose violations prior to knowledge of commencement of a formal investigation.

for payment until the date on which judgment issues.[14]   Prejudgment interest shall be

computed at the rate provided in 28 U.S.C. § 2644 and in accordance with 26 U.S.C.

§ 6621.  *See Horizon Prods. Int'l*, 82 F. Supp. 3d at 1356 (discussing prejudgment

interest).

Plaintiff also seeks an award of post-judgment interest.  Compl. at 9 (Wherefore

clause ¶ 4).  The court awards post-judgment interest on the unpaid duties and penalty

pursuant to 28 U.S.C. § 1961.  *See Great Am. Ins. Co. of N.Y.,* 738 F.3d at 1325-26.

### CONCLUSION

For the foregoing reasons, Plaintiff's motion for partial summary judgment is

granted.  Judgment will be entered accordingly.[15]


                                                   /s/      Mark A. Barnett
                                                   Mark A. Barnett, Judge


Dated: May 5, 2017
          New York, New York

---

[14] CBP issued its final demand for payment on April 20, 2011.  *See* Pl.'s MTD Opp'n,
Ex. A at CBP000202.
[15] Plaintiff pled count three in the alternative.  *See* Compl. at 9 (Wherefore clause ¶ 3).
Because the court is entering judgment for Plaintiff on counts one and two, count three
will be dismissed.